IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARK McGINNIS, | ) | 8:07CV276 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

The primary issue presented by this Social Security appeal is whether drug abuse is a contributing material factor to the plaintiff's disability, such that he is not entitled to receive disability insurance benefits. *See* 42 U.S.C. § 423(d)(2)(C). I will reverse the Commissioner's decision, which appears to be result-driven, and will remand the case for further proceedings.

## *I. BACKGROUND*

The plaintiff, Mark Mcginnis, applied for disability insurance benefits under Title II of the Social Security Act on February 25, 2004, claiming that he became disabled on February 7, 2003, because of depression, degenerative arthritis in his back, chronic fatigue syndrome, fibromyalgia, and headaches.[1] The application was denied on May 25, 2004, with the state agency finding that while McGinnis had a history of treatment for these conditions, they were not disabling. The state agency indicated that McGinnis could not perform his past work because he would have

---

[1] McGinnis was 39 years old on the date of the alleged onset of disability. He has a high school diploma and completed two years of college. His past relevant work included jobs as a nurse assistant, warehouse worker, material handler, stock clerk (meat), and department manager in a warehouse.

difficulty doing strenuous labor with his physical problems, and would have difficulty concentrating and following detailed instructions with his depression, but that based on his age and education, McGinnis should be able to make adjustments to work at other types of employment. His application for benefits was denied for the same reason on reconsideration, on June 29, 2004.

At McGinnis's request, an administrative hearing was held on October 13, 2005. Testimony was provided by McGinnis, by Thomas H. England, Ph.D., a licensed clinical psychologist, and by Gail F. Leonhardt, a certified rehabilitation counselor. The medical expert and vocational expert were both under contract with the Commissioner. McGinnis was represented by a non-attorney at the hearing. The administrative law judge ("ALJ") issued an unfavorable decision on May 25, 2006, concluding that "the claimant is under a disability, but that a substance use disorder(s) is a contributing factor material to the determination of disability." (Tr. 12-13.)

### A. The ALJ's Findings

In his decision, the ALJ evaluated McGinnis's disability claim according to the five-step sequential analysis prescribed by the social security regulations. *See* 20 C.F.R. § 404.1520. Among other things, the ALJ found that:

    (1)    McGinnis has not engaged in any substantial gainful activity since the alleged disability onset date.

    (2)    McGinnis "has the following severe combination of impairments: a history of alcohol abuse, marijuana abuse, alcohol induced liver disease, dysthymia with anxiety, banded esophageal varices, portal hypertension, mild lumbar spine pain with radiculopathy, and fibromyalgia (giving the claimant the benefit of the doubt regarding the appropriateness of the diagnosis . . .." (Tr. 14-15.)

    (3)    McGinnis does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.

2

(4) McGinnis "has the residual functional capacity to perform sedentary work as defined in the regulations with the ability to lift and carry 10 pounds and stand or walk two hours a day. Any such work should have an option to sit/stand and should avoid pushing/pulling repetitively with the lower extremities; avoid more than occasional bending, twisting, or turning; avoid crawling; avoid more than occasional stooping; avoid more than occasional squatting; avoid kneeling; avoid the use of air or vibrating tools or work around unprotected heights; avoid working in environments that have more than moderate dust, smoke, or fumes; avoid work extremes of heat, cold, or humidity; and avoid work where the ability to shift while seated is precluded. In addition, any such work should allow a slight limitation in remembering and carrying out short, simple instructions; a moderate limitation in carrying out and remembering detailed instructions; a slight limitation in the ability to make judgments on work-related issues; a slight limitation in interacting with coworkers and supervisors; and no limitations in the performance of semi-skilled or moderately skilled work. Moreover, the claimant would have moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms or to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 15.) McGinnis lacks the residual functional capacity ("RFC") to return to his past relevant work because his previous jobs "required the ability to perform at a consistent pace without an unreasonable number of breaks." (Tr. 16.)

(5) Considering McGinnis's age, education, work experience, and RFC based on all of his impairments, including "substance use disorder(s)," there are no jobs that exist in significant numbers in the national economy that he can perform.

After making this determination of disability, and having found medical evidence of alcoholism (in full sustained remission) and also evidence of frequent marijuana use (ranging from "up to three times a week" to daily usage), the ALJ

performed the additional 2-step analysis required by 20 C.F.R. § 404.1535(b)(2) to determine whether a substance use disorder is a contributing factor material to the disability determination. In other words, an assessment was made as to whether McGinnis would still be disabled if he stopped using marijuana. In this regard, the ALJ found, among other things, that:

> (1) "In the absence of substance use, the claimant would reasonably continue to have symptoms related to alcohol induced liver disease, banded esophageal varices, portal hypertension, mild lumbar spine pain with radiculopathy, and fibromyalgia. . . . [T]he claimant would also have severe dysthymia with anxiety, even though it would be less serious in the absence of substance abuse." (Tr. 18.)
>
> (2) If McGinnis stopped using marijuana, his RFC would improve to the extent that he would have only "a slight limitation in carrying out and remembering detailed instructions," and would no longer be limited "in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms or to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 21, 23.)

The ALJ determined that with this improved RFC, McGinnis would be able to work at occupations such as cashier II, telephone solicitor, or production assembler, as to which there exist a significant numbers of jobs in the regional economy. Thus, a finding of "not disabled" was made by the ALJ.

McGinnis filed a timely request for further review by the Appeals Council and submitted additional evidence, including a letter from his primary physician, Linda Garcia-Dorta, M.D., who stated that McGinnis had stopped using marijuana at her request and that she did not "believe at all that patient's prior use of marijuana is the cause of his symptoms that have been gradually happening for the past three and a half years." (Tr. 283.) The Appeals Council denied the request for further review on May 25, 2007. The present action was timely filed on July 20, 2007.

### *B. The Issues on Appeal*

Although not clearly identified either in his complaint or in his supporting brief, McGinnis appears to be claiming that:

(1) The ALJ failed to evaluate McGinnis's subjective complaints in accordance with *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).

(2) The ALJ substituted his own opinion for medical evidence in concluding that McGinnis's fibromyalgia is, at most, a "mild" impairment.

(3) The ALJ's determination that McGinnis's marijuana usage was a contributing material factor to his disability is not supported by the evidence.

### *II. DISCUSSION*

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.*, at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995); *Smith*, 982 F.2d at 311.

The RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant. *Goff v.*

*Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations. *Id.*

### A. Claimant's Credibility

To assess a claimant's credibility, the ALJ must consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions. *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000) (citing *Polaski*). The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole. *Id.* at 972. Where adequately explained and supported, credibility findings are for the ALJ to make. *Id*. (citing *Tang v. Apfel*, 205 F.3d 1084, 1087 (8th Cir.2000)).

The ALJ is not required to discuss methodically each *Polaski* consideration, so long as he acknowledges and examines those considerations before discounting the subjective complaints. *Id.* (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996)). Even so, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. *Id.* at 738-39.

The ALJ in this case did not cite *Polaski*, but indicated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the

6

requirements of 20 CFR 404.1529 [2] and SSRs 96-4p and 96-7p.[3]" (Tr. 20.) Despite this statement, the ALJ's written assessment of McGinnis's credibility can only be described as perfunctory. For example, the ALJ stated that "the plaintiff described having problems with chronic fatigue and pain that limited is activities of daily living" (Tr. 20), but there is no discussion of those limitations, such as the fact that McGinnis found it necessary to place his 2-year-old in day care because he was

---

[2] This regulation provides, in part:

> Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3).

[3] Among other things, Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (S.S.A., July 2, 1996).

unable to look after the child by himself. On the other side of the coin, there is also no mention in the ALJ's decision of a doctor's report, prepared in connection with a workmens' compensation claim filed by McGinnis for a back injury, which states that a surveillance video in May 2003 showed McGinnis mowing his lawn with a push mower and bending over to lift his child from a car seat without any difficulty. This report figured prominently in the state agency's decision to deny disability benefits, and it is also highlighted in the Commissioner's brief. Most troubling, however, is the ALJ's complete failure to discuss any of the medical treatment that McGinnis has received, including his extensive prescription medication record, since the alleged onset of disability. I find this failure to be reversible error.

### *B. Fibromyalgia*

Using language that I have already criticized in another Social Security appeal, *see Johnson v. Astrue*, No. 8:06CV586, the ALJ found that McGinnis's fibromyalgia had been "loosely diagnosed" by his doctors and, at most, constituted only a mild impairment:

> Of note, the record also includes a diagnosis of fibromyalgia, however, the undersigned finds that the claimant's fibromyalgia is [a] mild, if medically determinable impairment at all, as contemplated by 20 CFR 404.1529(b).
>
> Specifically, although the claimant has alleged he is disabled by fibromyalgia, a clinical basis for the diagnoses is not found in the medical evidence of record. Fibromyalgia is a diagnosis of exclusion, and treatment is only palliative and rarely successful. In large measure, the record shows essentially reference upon reference to a remote diagnosis of fibromyalgia, or another physician's diagnosis, or a diagnosis without any of the requisite findings. There are any number of other medical conditions that could result in functional limits allegedly related to fibromyalgia; the difference is that the other diagnoses conditions are amenable to treatment.

8

> The record contains no conspicuous evidence that the claimant has been found to have tender (painful) points on examination that are on both sides of the body at the requisite intensity and locations. Jay Kenik, M.D., a rheumatologist at Creighton University, reported that his physical exam found "diffuse trigger points" (Exhibit 16F/1-6). However, for a diagnosis of fibromyalgia, a site that is tender is not automatically a painful site. Dr. Kenik has opined that the claimant is disabled by "fibromyalgia classic," characterized by chronic fatigue, problems with cognition, peripheral numbness and tingling, headaches and poor quality of sleep (Exhibit 16F/6). However, Dr. Kenik's October 2005 description of tender points as "diffuse" are not particularly clear.
>
> Larry Klein, M.D., also assessed the claimant with chronic pain on the basis of fibromyalgia and reported that the claimant had greater than 11 out of 18 trigger points (Exhibit 10F/1). Deborah Doud, M.D., a treating rheumatologist, reported in December 2003 that the claimant had only six trigger points (Exhibit 8F/3). For a diagnosis of fibromyalgia, at least 11 of 18 tender points must be demonstrated and these reports do not appear to be consistent or adequately documented. The claimant has reported pain throughout his body for several years, but these generalized, diffuse symptoms are insufficient after a brief physical examination that does not rule out other conditions.
>
> For the purpose of determining disability, fibromyalgia is not an automatic allowance. An individual may experience mild or more severe pain, and it is important to determine the intensity, duration, and persistence of the pain. The distinction between "painful" and "tender" must be made. In sum, the record fails to present probative evidence that the claimant's symptom complex, which has been loosely diagnosed as fibromyalgia, is more than a mild medically determinable impairment.

(Tr. 18-19.)

Even though the ALJ obviously views fibromyalgia diagnoses with disfavor, the Eighth Circuit has recognized that fibromyalgia is a chronic condition which is difficult to diagnose and may be disabling. *Pirtle v. Astrue*, 479 F.3d 931, 935 (8th

Cir. 2007) (citing *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir.2005) (per curiam)). Fibromyalgia is verifiable only through patient self-report. *Chronister v. Baptist Health*, 442 F.3d 648, 656 (8th Cir. 2006). However, the Eighth Circuit has expressly held that the eighteen point "trigger test" described in the ALJ's decision qualifies as a "clinical examination standardly accepted in the practice of medicine" and constitutes objective evidence of the disease. *Id.* (quoting *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809 (8th Cir.2006)). *See also Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003) ("Fibromyalgia, a chronic condition recognized by the American College of Rheumatology (ACR), is inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue. Diagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests. According to the ACR's 1990 standards, fibromyalgia is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points.").

In this case, a rheumatologist, Jay Kenik, M.D., completed a fibromyalgia assessment form on October 17, 2005, which stated that McGinnis met the ACR's 1990 standards[4] and opined, among other things, that because of the fibromyalgia McGinnis would be absent from work more than 4 days a month. The ALJ found this opinion to be "reasonable only when considering the effects of the claimant's ongoing substance abuse." (Tr. 16.) The ALJ stated that "no weight is given to [Dr. Kenik's] opinion that the claimant could not perform a full day of work without being absent more than 4 days a month since he did not consider the claimant's capacity in the absence of drug use (Exhibit 16F)." (Tr. 23.) McGinnis's family physician, Linda Dorta-Garcia, M.D., also prepared a medical source statement on October 5, 2005,[5]

---

[4] Dr. Kenik previously examined McGinnis on July 30, 2004, and confirmed the diagnosis of fibromyalgia, finding that "[t]ender points numbered 18 of 18." (Tr. 280). However, the report of this examination was not contained in the record when the ALJ issued his decision.

[5] Dr. Dorta-Garcia saw McGinnis over 20 times since February 2003.

which indicated that McGinnis's impairments would cause him to be absent from work more than 4 days a month. The ALJ again gave "no weight to this doctor's opinion concerning the number of absences to the extent it did not consider the impact of drug use." (Tr. 23.)

The Commissioner's regulations provide that if an ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the clamant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). Also, an ALJ will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §404.1527(d)(5).

Although the ALJ in this case accepted Dr. Kenik's fibromyalgia diagnosis by "giving the claimant the benefit of the doubt" (Tr. 15), the ALJ indicated that he was "convinced that the claimant's fibromyalgia is mild, if it exists at all, despite his allegations [of pain and fatigue]" (Tr. 22). The ALJ stated that he was "impressed that the claimant's alleged [fibromyalgia] symptoms are consistent with his other problems and . . . [that] there is no reference to the extent of pain at the tender points." (Tr. 22.) Even if the examining physicians failed to document "the extent of pain at the tender points," the ALJ was not free to conclude that there was only "mild" pain or tenderness on examination. I also note that Dr. Kenik indicated in the fibromyalgia assessment form that McGinnis exhibited a "moderate" degree of chronic pain/paresthesia. (Tr. 274.) The ALJ disregarded this finding.

The ALJ's discounting of McGinnis's fibromyalgia obviously is related to the ALJ's determination that "the claimant's statements concerning the intensity, duration and limiting effects of [his] symptoms are not entirely credible." (Tr. 20.) However, even though he considered McGinnis's subjective complaints to be exaggerated, the ALJ incorporated into his initial RFC assessment most of the functional limitations

11

that were noted by Dr. Kenik in the fibromyalgia assessment form, and concluded that a finding of "disabled" was required unless drug abuse was a contributing material factor. Consequently, the question of whether the ALJ gave enough weight to the opinions of the treating physicians arises primarily in connection with the revised RFC assessment, and is part of the larger issue of whether there is substantial evidence to support the ALJ's finding that marijuana usage was a contributing factor material to the finding of disability. I take up this larger issue next.

### *C.  Drug Abuse*

As noted in the previous section, the ALJ stated that he gave "no weight" to the opinions of Dr. Kenik and Dr. Dorta-Garcia that McGinnis would be absent from work more than 4 days a month because these opinions did not consider what would happen if McGinnis stopped using marijuana. McGinnis, however, testified that he had stopped using marijuana 6 months before these opinions were rendered. As also noted previously, Dr. Dorta-Garcia opined when McGinnis was seeking to have the ALJ's decision reviewed by the Appeals Council that she did not "believe at all that [the] patient's prior use of marijuana is the cause of his symptoms that have been gradually happening for the past three and a half years." (Tr. 283.)

McGinnis testified that he started using marijuana toward the end of 2003 for relief from headaches and nausea. McGinnis disclosed this to Louis Jeffrey, Ph.D., a psychologist who examined him on February 23, 2004, and noted "almost daily" marijuana usage (Tr. 178.) McGinnis disputes saying this, and contends that he only used marijuana 2 or 3 times a week. Dr. Jeffrey stated: "The fact that marijuana relieves headache pain (not a usual effect of the drug) for this patient suggests that it's [sic] actual effect, in his case, is anxiolytic. There is a concern that its use contributes to his anhedonia and amotivation." (Tr. 179.) The ALJ gave "significant weight to Dr. Jeffrey's comment concerning the claimant's use of marijuana as contributing to his anhedonia and lack of motivation (Exhibit 9F/2)." (Tr. 16.) The ALJ also gave "significant weight to the physicians at the state agency who opined

12

that the claimant would have moderate limitations completing a normal workday or workweek or performing at a consistent pace without an unreasonable number of breaks." (Tr. 16.) I note that the consulting psychologist for the state agency who prepared the mental RFC assessment indicated that daily marijuana use by McGinnis "is not considered material, but does contribute to his anhedonia and amotivation." (Tr. 146.)

Dr. England, the medical expert who appeared at the administrative hearing, also testified that "[f]rom a psychological standpoint, I don't see that [the marijuana usage] would have been material, particularly. . . .  I don't know that I find if substances would have had a material impact on his psychological condition.  There is some possibility they would have, but that would be speculative. . . .  I would say that there's -- depending on the level of [marijuana] use, if we take testimony at perhaps more than once a week, I would say that that could affect . . . the concentration, persistence and pace to a degree, certainly." (Tr. 331, 335, 336.) The ALJ gave "significant weight" to the medical expert's testimony that McGinnis's marijuana usage "certainly would affect the payment's [sic] ability to concentrate, keep pace, and maintain persistence in work activities." (Tr. 16.) The medical expert testified that he was not familiar with the ACR's 1990 standards for diagnosing fibromyalgia and stated that he would need to have a physician comment on the effect of marijuana usage on McGinnis's medical condition.  (Tr. 331, 333.)

Even though Dr. Kenik's opinion was given with specific reference to the fibromyalgia assessment, and was found by the ALJ to be entitled to no weight for that purpose, the ALJ "[w]hen considering the effect of the claimant['s] substance abuse, . . . [gave] weight to the opinion of Dr. Kenik, who opined that it would be likely that the claimant would be absent from work more than four days a month (Exhibit 16F/5)." (Tr. 16.) This is a gross distortion of Dr. Kenik's medical opinion.

The ALJ reasoned that a limitation on McGinnis's ability to complete a normal workday or workweek would not exist if he stopped using marijuana because "[t]he

13

logical inference is that in the absence of substance abuse, the claimant would have less anhedonia and greater motivation." (Tr. 23.) I conclude that this finding is not supported by substantial evidence in the record. Apart from the medical expert's general observation that marijuana usage could affect concentration, persistence and pace "to a degree," there is no medical evidence on this point. Moreover, for reasons previously explained, I conclude that the ALJ erred by rejecting the opinions of Dr. Kenik and Dr. Dorta-Garcia that McGinnis would be absent from work because of pain and fatigue associated with fibromyalgia. There is no evidence in the record that marijuana usage contributed to these symptoms.

### *III. CONCLUSION*

The ALJ appears to have been overly intent on finding that McGinnis is unable to work because of drug abuse. Because there is not substantial evidence to support the ALJ's determination that McGinnis's marijuana usage was a contributing factor material to the ALJ's finding of disability,[6]

IT IS ORDERED that judgment shall be entered by separate document generally providing that the final decision of the Commissioner is reversed and the cause remanded for further proceedings consistent with this opinion.

March 17, 2008.                      BY THE COURT:

                                             s/ *Richard G. Kopf*
                                             United States District Judge

---

[6] I do not remand for an award of benefits because it is not clear to me that a finding of disability is required.